Farmers Automobile Insurance v. Coulson Council, whenever you're ready, may proceed. Introduce myself. My name is Sam Panos. I represent Cassie Coulson in this case. She's the appellate. This is an underinsured motorist claim that we have filed. It is the subject of this litigation. To give you a little background of why we are here, Cassie was seriously injured in an automobile accident which occurred back in December of 2006. It occurred on a piece of property down in Murfreesboro, Illinois. It is a sandwich shop and she was a customer in the subway sandwich shop. A vehicle driven by Mr. Robert Roy went through the plate glass window in the sandwich shop and crushed her at the service counter causing her very severe injuries. I'm not going to go into the details of those, but it also injured her boyfriend that was at the service counter and two other patrons. Mr. Roy's liability carrier, State Farm, had a $50,000 limit on the automobile liability policy. They tendered $24,000 to Cassie for her injuries and $26,000 they paid to the other injured parties. We then filed, because of the nature and extent of her injuries, we resolved the underlying claims against the property owner, subway and the property franchisee for $410,000. Our claim is that her injuries and damages far exceed that and she has not been made whole. We then filed a claim with Farmers under the underinsured motorist provision coverage of her mother and stepfather's policy. I believe there were three cars insured on that policy. Farmers responded to our request for payment with the declaratory judgment action that was filed down in Jackson County. Judge Dahlem entered an order in favor of Farmers and that's why we're here. What we claim in this appeal, as we claimed in Jackson County, is that the set-off provisions of the policy are ambiguous. I think the case law suggests that we can review that here in this court, DeNovo, and that's what we're asking you all to do. The specific claims that we're making involve a Form 1061, which was included in the policy that was mailed to the Hearns, which are the policyholders. The actual set-off provisions in the policy, which are at page 32 of the appendix. The insuring agreement, which is at page 31 of the appendix, and the, excuse me, those are the items that we claim are ambiguous. Read together with the other parts of the policy, including the declaration page, we feel that they are not clear. Specifically, if you look at the declarations page of the policy at page 58 of the appendix, it lists the underinsured motorist provisions at $300,000, $500,000. Nowhere in the declaration page does it address the set-off provisions in the limitation of liability section of the policy. If you look at the Form 1061 at page 155 of the appendix, which is a form that was sent to the policyholders by Foreman. And this form was sent with the original policy and contains. That's the form that the trial court found was not part of the policy. Yes. Page 155, this form, likewise, that was sent with the policy. If you look at the affidavits that we filed, this was sent with the policy. The corporate designee and representative of farmers testified that it was sent with the policy, but she did not certify that as part of the policy. She as well did not certify the declarations page as part of the policy initially, so we filed a request for discovery. But in any event, this particular important notice, which contains a beacon insurance stamp for farmers insurance, and it appears to be an endorsement, was included just before the O&R amendments to the policy. And in that section, there's no reference to the set-off provisions. Specifically, it gives a definition similar to the insuring agreement claiming that they will pay for underinsured motorist benefits to any damages that the claimant suffers, less the underinsured motorist policy coverage. So there's no reference in that paper to the set-off provisions. So initially, what we're claiming is that what this policy does is set forth an understanding of the declarations page in the insuring agreement and in this form 1061 claiming that they're going to pay $300,000, $500,000 on the underinsured motorist coverage. And there's nowhere on the declarations page, in the insuring agreement section, or in this form that they sent with the policy referencing the set-off provisions. So we're claiming that what they're doing is the people who look at the policy are reading the declarations page, I think it's probably about the farthest they get, there's no reference to any set-off. So what they're faced with is, well, we're buying insurance, we think that we're covered up to $300,000 per person, less what the underinsured motorist coverage is, and that's what we're hoping for and that's what we expect. But then, farmers argue in their set-off provisions that that is taken away under the terms of the set-off provisions. I think that that in and of itself is ambiguous, it creates an ambiguity. The next ambiguity that we're claiming is with the set-off provisions themselves. They're on page 32 of the appendix. And the set-off provisions indicate at the top of page 32, basically what it says is, except in the event of a settlement agreement which doesn't apply, the limit of liability for this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy. That's the set-off provision that I think farmers is claiming applies here, because if there's $300,000 coverage and she's already recovered $410,000 from the property owners and $24,000 from State Farm, then it exceeds the policy. What our argument is, is that by that last sentence, this includes all sums paid under Part A of the policy, I believe that creates an ambiguity and it's a limiting statement that someone could construe as limiting that section to the payments made under Part A. No, it didn't apply in this case, but that is a reasonable reading of that section. And it would not take a whole lot to make that section crystal clear that that did not only apply to payments made under Part A. Likewise, just below that, Paragraph B, the limits of liability for this coverage shall be reduced by all sums paid or payable because of the bodily injury under automobile medical pays coverage. This includes all sums paid under Part B of this policy. What our argument is, is that limits, that is, reemphasizes and reinforces our argument under the Section B. That's limiting language, which specifically limits it to the medical pay. We believe that those limiting sections create an ambiguity in the set-off provisions of the policy. Mr. Farmer has also claimed, and I think Judge Dolan indicated in her order, under Paragraph F of the set-off provisions, that we will not make a duplicate payment under this coverage for any element of loss for which payment has been made or buyer on behalf of persons or organizations who may be responsible. There's no definition for duplicate payments anywhere in the policy, and there's no definition for element of loss in the policy. So we argue that that is ambiguous, and it's impossible for a policyholder to understand what that duplicate payment means. Does it mean a duplicate payment under medical pay? What does it mean? So those are basic arguments with respect to the ambiguities contained in the policy. Now, Mr. – just for purposes of clarification, on the declaration pages, they did have language in there which identified the anti-stacking issue. They could have just as easily put that on the front declaration page to make it more clear with respect to the set-offs. The Form 1061 that I referred to, and I know Judge Dolan quoted from Sulzer, which I think she quoted from the State Representative's testimony in the legislative session when they were discussing the statute which talked about the set-off provisions for workers' compensation benefits. And I think what she quoted was a resolution of that issue with respect to the workers' compensation benefits in underinsured voters' cases should have been identical to that which was provided in the uninsured voters' provisions. I don't know that those sections are applicable here, and I don't know that that case is applicable to these facts. That's the basis of our argument, and we're asking you to consider trial – excuse me, de novo review of those ambiguities. Thank you, Counsel. Counsel? Good afternoon, Your Honors. May it please the Court, Counsel, for the record, Robert Chemers, from the Principal's Office in Chicago for the Plaintiff Appellee, Farmers Automobile Insurance Association. There's an old movie called It's Tuesday, This Must Be Belgium. It's Tuesday, and I'm in the Fifth District. This is my fourth argument in the last seven days. Yesterday at this time, I was driving to Ottawa for a 2.30 hearing there. I think I have the right notes for this appeal. Justice Wexton, you've made a comment with respect to the 1061. Judge Dowling, the Circuit Court judge, did find it was not part of the policy. The Second District Appellate Court, Farmers v. Rowland, also found it was not part of the policy, and we cited that case as 379, Hill-Rapford, 696. And it's Rowland, right? Same issue was raised in Rowland-Vera, U-M, here it's U-I-M. I don't think it makes any difference. We have the uncontroverted sworn deposition testimony of the underwriter, who testified it's a stuff. It is not part of the policy. But I certified every piece of paper that comprises the policy issued to John Hearn and his wife. 1061 is a stuff. It is included with the new issue policy to give information. The same as other documents that are sent with the new policy and with renewals provide information, such as the privacy notice, such as the sheet with respect to how to pay your premium by credit card, such as the insurance cards, which are probably something every person in this courtroom has in his or her wallet or in the glove compartment of their car. It's your insurance I.D. card. It is also not part of the policy. And no reasonable person is going to make a contention that because limits are stated on an insurance I.D. card, but there's no exclusion or set-up, that somehow the policy to which it refers is ambiguous. Does it say this notice is not part of the policy? It doesn't say that. It just says important health. I don't know how we can't get this so clear that it's not questionable anymore. We've been through this stacking for a long time. That would make it clear, wouldn't it? The stacking issue, this court has been through, but I think Hobbs, out of our Supreme Court in 2005, put stacking to an end, even for the Fifth District. And I must have lost six stacking cases in this court, and I argued Hobbs, and that ended stacking. Also in this case, stacking has been waived. A number of issues have been waived by the appellant in this case, including stacking, bearing in mind that he asked the trial court to find that the three vehicles on this 300-500 policy stack to 900,000. That's been waived. The trial court found it did not. To her credit, the trial court wrote an eight-page typed opinion in a case that, if appealed, gets de novo review, and this court will say, we really don't care what the circuit court thought. We're not bound by it, but as long as she reached the right result, even if she had the wrong reasons, you affirm. But on de novo review, you don't even have to do that. You start at square one, as did Judge Dowling, as a motion court, which your honors all were at one point. You sat in the circuit courts around Southern Illinois and heard motions and decided that. Busy circuit court judge to have an eight-page typed opinion in a case like this is credit to the trial court. And the right result. This policy is clear and unambiguous. The stuffer is just that. It's an information sheet. The Second District said it's an information sheet. You can't look at this sheet and say this is the policy. There are no terms. There are no conditions. There are no definitions. There are no limitations. There are no exclusions. And, of course, there are no set-ups. It is not the policy. It merely is informational as an attempt to answer the various questions that are put in bold-faced capital letters, asking these rhetorical, hypothetical questions. What is uninsured motives coverage, including underinsured motives? It's not intended as a compendium of insurance law or explanation for the reader. And it's not part of the policy. Again, that is the uncontroverted testimony of the underwriter who was proposed by counsel for the appellant. And there's nothing contrary in this record. To make this part of the policy is to create something that it was never intended to be, and that was the testimony of the underwriter. With respect to the set-off provisions of this policy, the Surgery Court applied the plain, reasonable, unambiguous language of this policy, which says that the court will set that the carrier is set off all payments, all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. That would include the at-fault driver. It's $24,000. That would include the $410,000 paid by the subway, restaurant, and the owner of the parking lot. This case is probably the reason why it's a good idea to go into a restaurant, if you go into one, that has a concrete block in the parking lot in front of the plate glass window. This one didn't. Hence, the owner paid $410,000 when that car went through the plate glass window and hit somebody standing and waiting to have a sandwich. The policy says all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible are set off from the limit. There is no question here that the at-fault driver, the property owner, and the restaurant franchisee were all persons or organizations who may be legally responsible. That's why they paid between them $434,000. It's unmistakable that $434,000 is greater than $300,000, which is the policy limit here, which is why the Circuit Court granted Farmer's motion for summary judgment that there was no entitlement to underinsured motorist coverage here. The Seltzer case out of our Supreme Court spoke of a $100,000 policy and the ability of the insurer there to set off workers' compensation payments from underinsured motorists. The Supreme Court ruled the policyholder is not necessarily assured of receiving the total $100,000 from the insurer, but only of receiving that portion of the $100,000 which is not recovered from third parties. You can change that. Cassandra Poulsen is not necessarily assured of receiving the total $300,000 from Farmers, but only of receiving that portion of the $300,000 which is not recovered from third parties, which is not recovered from the at-fault driver, the subway restaurant, and the shopping center owner. She received from them $434,000. The Illinois Supreme Court in Seltzer also stated, 147 Illinois 2nd and 557, that set-off provisions such as this are appropriate and any benefit due under the terms of an underinsured motorist policy is reduced dollar for dollar by the amount recovered from the tort fees. So, if you have a $300,000 limit and $434,000 paid by the tort fees, there's no entitlement to anything under the underinsured motorist coverage.  That's what the circuit court recognized here. The arguments from the appellant with respect to ambiguity bounce around the policy as if you could read the policy by bouncing around. You must read the policy as a whole. The case law is legion with respect to that concept. When this policy is read as a whole, then the nature of the coverage is clear. The fact that we don't cite certain settles is irrelevant. The fact that we don't refer to any money paid under Part A, you just heard what Mr. Cannell said, is irrelevant because it's not applicable. Part A of the farmer's policy is the BI coverage. That is the third-party liability coverage. That's the coverage where if you're defending the insurer, you pay on the insurer's behalf. That's because you could have a situation where you have an underinsured motorist, you have a situation where the passenger has a claim against the driver and money is paid under Part A, but the vehicle was involved in an accident with an underinsured motorist. That would indicate that any money paid under Part A for the insured driver is a set-off with respect to any monies to be paid under an insured motorist. That's not the situation here. The at-fault driver was not farmers insured, it was state farms insured. Part B coverage is med-pay. Farmers didn't make any med-pay payment to Cassandra Coulson, therefore they're not claiming a set-off there. What we're claiming a set-off for, unremarkably, is what she received. That is monies paid on behalf of persons or organizations who may be legally responsible for her injuries, $434,000, which under this policy is subject to a set-off. We don't have any argument that that part of this policy is ambiguous. Instead, it looks at that part of the policy, ignores it, and then points to other parts and says, well, what about this, what about that, including the sarcastic rhetorical question in the appellant's brief. Bear in mind there is no reply brief. Well, what about health insurance? Why don't they set that off too? Well, the response to that is that's not part of this. And that doesn't make this policy ambiguous. Illinois is not a reasonable expectation state. It doesn't matter that the insured says, I got the policy, I thought it was part of the policy. You have the sworn testimony of the underwriter saying the purpose of the document, your honors can read the document and see that it does not alter, amend, modify, or vary the terms and conditions of the underinsured motorist coverage. It has no definitions, no terms, no conditions, no agreements. It is not intended as a policy. It's intended for what it says, important notice. And it gives notice that this policy has underinsured motorist coverage and a brief description to a layperson as to what it means. Again, you have to read it as a whole, and you can't read that as part of this policy. The same as you can't read the quick reference guide, which the appellant also complains about, which is nothing more than a table of contents of the policy. That too cannot have every term, condition, limitation, exclusion, or definition on it, or it becomes a subset of the policy. Every page is not a subset of the insurance policy. It is the pages together that comprise the policy as the underwriter swore. That is the policy. There are three separate forms in the declarations page, which unfortunately was inadvertently omitted when we filed our suit. It was subsequently provided through discovery. So that's not a mystery or an issue here. When this court reviews this to know it will come away with the same conclusion, I suspect, as did the circuit court, the policy clear and unambiguous, and that where is here, a $300,000 limit is provided for underinsured motorist coverage. However, there's a setup for any amount paid because of the interest sustained by the claimant, by a person or organization who may be legally responsible that where that claimant recovered $434,000 as admitted, there is no entitlement to underinsured motorist coverage. For those reasons, Your Honors, I ask this court to affirm the judgment entered for farmers. If there are questions, I'll sit down. I don't believe there are. Thank you. Counsel? Mr. Chemers talked about the Rowland case, which Judge Dahmer referenced and indicated that ruled and concluded that there's just dicta. That was not presented to that court for any decision. There was just a comment made about this particular Form 1061. We presented it and preserved that issue. Insofar as the certificate that Mr. Chemers talks about with respect to Cheryl Robinson, the corporate designee, she testified in her deposition that she didn't have any idea of what the mailroom said. The way she came to conclude that those documents were going to be compiled and certified as the accurate insurance policy was she looked on the computer to see what the secretaries typed in, insofar as the addendums and attachments to the policy and the declarations page. She pushed a button and it printed out. She didn't get the declarations page. She also testified that that document, 1061, was sent with the original policy. There's no question about that. So that was sent. And as far as the trying to determine the ambiguities in the policy and bouncing around the policy itself, farmers drafted this document. And I believe that originally when these underinsured motorist policies were issued that they didn't have all these additional setoffs and exclusions. That was the result of legislative issues. This court and the Supreme Court's decisions where they try and match that. So the fact that they have their endorsements in the policy for Illinois, at the end of the policy you have to go back there, you read the whole thing, and then you go to the Illinoisian group. So this is a creation of the Farmers Insurance Company. And that's the reason why we have to go through it this way. So in response, I would ask the court to reconsider the ambiguity arguments that I've made and enter a fine in favor of the help. Thank you, counsel. We appreciate the briefs and arguments. The counsel case will be taken under advisement. Thank you.